UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
IN RE:                                                                             Case No.: 19-73623-ast

Sandra Velasco-Rodriguez aka
Sandra M. Velasco,                                                          Chapter 13

                                            Debtor.
-------------------------------------------------------x

## DECISION AND ORDER GRANTING PRE-CONFIRMATION ADEQUATE PROTECTION PAYMENTS

On May 17, 2019, Debtor filed a chapter 13 bankruptcy petition. At the petition date, Debtor owned property located at 85 Heyward Street, Brentwood, NY 11717 (the "Property"), which was subject to a mortgage owned or serviced by Select Portfolio Servicing, Inc. ("SPS").

Also on May 17, 2019, utilizing the mandatory chapter 13 plan form required in this district, Debtor filed a plan which, *inter alia*, called in Section 3.2 for post-confirmation payments to be made to SPS at the reduced amount of "$2,436 including interest and escrow of $700 per month," based on a loan modification that Debtor hoped to achieve with SPS. [dkt item 2] Debtor's Plan further provides, "The estimated monthly payment shall be paid directly to the trustee while loss mitigation is pending and until such time as the debtor(s) has commenced payment under a trial loan modification." As required, Debtor began making plan payments to the chapter 13 trustee (the "Trustee") while she sought a loan modification.

On July 6, 2020, the Trustee filed a motion to dismiss this case (the "MTD"). [dkt item 22]

On July 16, 2020, Debtor filed opposition to the MTD. [dkt item 25]

On October 26, 2020, SPS filed a motion for pre-confirmation adequate protection payments (the "Motion"), which is the subject of this Order. [dkt item 28]

On November 5, 2020, SPS filed an amended Motion. [dkt item 30]

On November 25, 2020, Debtor withdrew her opposition to the MTD. [dkt item 31]

On December 3, 2020, Debtor filed opposition to the Motion. [dkt item 32]

The Court heard the Motion on December 10, 2020 (the "Hearing"). SPS is seeking an adequate protection payment of $34,398.04, representing the proposed mortgage payments called for under Debtor's plan from June 2019 through October 2020. SPS asserts that the Trustee is holding $36,406.02. While Debtor opposes making any adequate protection payments, she argues that if adequate protection were required it should only be paid from the filing date of the Motion, not retroactively. During the post-petition period from August 27, 2019 through August 27, 2020, not only has SPS received no payments, it has advanced $9,493.48 in real estate taxes and insurance premiums related to the Property; Debtor does not contest this fact.

Debtor and SPS disagree as to the specific timing of and reasons for Debtor being denied a loan modification. However, while blaming each other for the delays which followed Debtor's pre-petition loan modification application initially being submitted, the parties agree on the following timeline as to when Debtor's loan modification package was finally complete, considered, denied, appealed, and denial upheld:

12/31/2019 Loan application deemed complete.

1/22/2020 Debtor received denial letter.

2/21/2020 Debtor filed appeal of the denial.

3/16/2020 Debtor received letter upholding the denial.

*Discussion*

Debtor asserts that granting retroactive adequate protection violates the United States Supreme Court's recent admonition in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, (2020). In *Acevedo*, the Supreme Court stated that "[f]ederal

courts may issue *nunc pro tunc* orders, or 'now for then' orders, . . . to 'reflect [ ] the reality' of what has already occurred . . . 'Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court.'" *Id.* at 700-01 (citations omitted). *Acevedo* lead Judge Grossman to review his practice of *nunc pro tunc* retention of professionals; he held that "[t]his Court's reading of *Acevedo* is that utilizing *nunc pro tunc* orders to approve the retention of estate professionals retroactive to some date prior to the actual date of court approval is inappropriate." In re Benitez, No. 8-19-70230-REG, 2020 WL 1272258, at *1 (Bankr. E.D.N.Y. Mar. 13, 2020).

This Court views a request for retroactive adequate protection differently than a *nunc pro tunc* order. SPS is not asking for an order to be entered now to reflect relief as if granted previously. SPS is seeking relief that was not sought sooner in the case. Neither side briefed the issue of whether adequate protection should be granted that predates the actual request.

As it typically does, this Court first turns to the Bankruptcy Code (the "Code") itself for guidance. Section 361 provides that "[w]hen adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by" certain different means, including payments.[1] Section 362(d)(1) provides that the court shall grant relief from the stay for cause, including lack of adequate protection. Finally, Section 363(e) provides that "on request of an entity that has an interest in property used, sold, or leased . . . the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

---

[1] (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

A cogent reading of these sections is that once a party requests adequate protection, the court may then determine whether adequate protection is lacking and should be provided; at that juncture, the court should determine what adequate protection should then be granted and/or if stay relief should be granted. This is consistent with an analysis conducted by renowned, former Bankruptcy Judge Burton Lifland, who held in 1992 that since Section 363(e) provides that "on request" the court "shall prohibit or condition" the use, sale or lease of the collateral, "[t]hese phrases suggest that a secured creditor is entitled to adequate protection only upon motion and only prospectively from the time such protection is sought." *In re Best Prod. Co., Inc.*, 138 B.R. 155, 157 (Bankr. S.D.N.Y.), *aff'd sub nom. In re Best Prod. Co.*, 149 B.R. 346 (S.D.N.Y. 1992). Although decided in the context of a motion seeking adequate protection filed after a lease had been allowed to be rejected, Judge Lifland stated that "[b]y making a motion for adequate protection, a secured creditor demonstrates its concern and puts the debtor in a position where it must decide what it should do with collateral." *Best Prod. Co., Inc.*, 138 B.R. at 158. By filing the motion, the "debtor is given the option to surrender the property to the entity that has made the request, and avoid providing adequate protection, or provide adequate protection to such entity for the debtor's continued use of the collateral." *Id. See also In re 300 Washington St. LLC*, 528 B.R. 534, 552 (Bankr. E.D.N.Y. 2015) (citing *Best Products* for holding that adequate protection is owed as of the time that the creditor made its motion, rather than as of the time that the debtor filed the petition).

This Court agrees; allowing adequate protection to a lender is appropriate once a lender has filed a motion seeking such relief under Sections 361, 362 and/or 363, and granting retroactive relief to a time prior thereto is not appropriate, absent exceptional circumstances. SPS asserts that it should not be penalized for working with a debtor who seeks a loan modification and not rushing

4

in to seek stay relief. However, SPS waited an unusually long time in a relatively simple chapter 13 case to request adequate protection – over seventeen months from the petition date and over nine months after the modification was denied.

While SPS is correct that this District's mandatory Chapter 13 Plan requires the Debtor to make hoped-for mortgage payments to the Trustee while she seeks a loan modification, that plan does not contain a directive that those payments go to the lender. Conversely, Debtor asserts, essentially, that a lender who wrongfully denies a loan modification is not entitled to adequate protection. However, because this Court lacks statutory authority to require a loan on a debtor's primary residence be modified, there is no violation of the Code here as the result of such a denial, nor a statutory basis to deny adequate protection due to a "bad faith loan modification denial." *See e.g. In re Kolnberger*, 603 B.R. 253, 266-67 (Bankr. E.D.N.Y. 2019) (noting that courts have not held that "an alleged RESPA violation is a valid basis to deny stay relief.").

This Court has routinely required adequate protection payments to be made in chapter 13 cases after a reasonable time has been provided for the parties to see if a loan modification can be worked out, but where the debtor desires to continue the negotiations shielded by the protections of the stay. Similarly, a creditor who pays a debtor's real estate tax obligations and/or provides for property insurance post-petition should have a reasonable expectation that, upon request, those out-of-pocket expenditures will be reimbursed by the Debtor.

Debtor also asserts that adequate protection should also be denied here, because even though the Property was worth less at the petition date than the amount of the mortgage, the house has actually increased in value post-petition, although to an amount that still renders SPS under secured. SPS disagrees on the value of $340,000 asserted by Debtor and attached a Broker's Price Opinion to its Motion with a valuation of $300,000. To resolve this disagreement over diminution

5

in the value of the Property, a contested evidentiary hearing would need to be held before the case were dismissed, given that Debtor is no longer contesting dismissal. It would be inconsistent with Bankruptcy Rule 1001, which calls for "the just, speedy, and inexpensive determination of every case and proceeding," to keep this case open to hold a contested evidentiary hearing on diminution and thereby have the automatic stay continue to prohibit both sides from exercising their non-bankruptcy rights.

Finally, SPS did not seek stay relief, only adequate protection. Thus, upon dismissal, Debtor will not be prohibited from refiling for 180 days under Section 109(g).

For the above reasons, prior to dismissal, the Trustee should be directed to release to SPS the sum of $7,308, representing Debtor's proposed monthly mortgage payments of $2,436 for the months of October, November and December 2020, plus the $9,493.48 in real estate taxes and insurance premiums related to the Property advanced post-petition by SPS, for a total of $16,801.48 of adequate protection.

Based thereon, it is hereby

**ORDERED,** that the Chapter 13 Trustee is directed to release to SPS the sum of $7,308, representing her proposed monthly mortgage payments of $2,436 for the months of October, November and December 2020, plus the $9,493.48 in real estate taxes and insurance premiums related to the Property advanced by SPS, for a total of $16,801.48; and it is further

**ORDERED,** that this case will be dismissed once the Trustee has disbursed these funds.



**Dated: January 14, 2021**                                                      **Alan S. Trust**
     **Central Islip, New York**                                  **Chief United States Bankruptcy Judge**